993 P.2d 1037

ARIZONA'S TOWING PROFESSION-
ALS, INC., dba Shamrock Tow-
ing, Plaintiff–Appellant,

v.

STATE of Arizona, acting through the De-
partment of Administration; Depart-
ment of Public Safety, a body politic;
L.E. Himmelstein, Finance Manager
and Procurement Officer, Department of
Public Safety; McClure–Early Enter-
prises, an Arizona joint venture, dba
Western Towing; Diversified Towing,
Inc., an Arizona corporation, dba Cactus
Towing; Clement Towing, an Arizona
sole proprietorship; Fast Towing, Inc.,
an Arizona corporation, Defendants–Ap-
pellees.

No. 1 CA–CV 98–0330.

Court of Appeals of Arizona,
Division 1, Department A.

Jan. 21, 1999.

Miller, LaSota & Peters, P.L.C. by Donald M. Peters, Susan A. Cannata, Phoenix, Attorneys for Plaintiff–Appellant.

Janet A. Napolitano, Attorney General by Richard L. Rice, Assistant Attorney General, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

GERBER, Judge.

¶ 1 Arizona's Towing Professionals, Inc. dba Shamrock Towing ("Shamrock") appeals from the trial court's judgment affirming the administrative decisions of the Arizona Department of Administration ("DOA") and the Arizona Department of Public Safety ("DPS") canceling DPS' contract with Shamrock for towing services. For the reasons discussed below, we reverse and remand for entry of judgment in favor of Shamrock.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 In November 1995, DPS issued an Invitation for Bids ("IFB")[1] to private companies for towing services in the Phoenix area. The IFB called for the bidders to supply a price for six different "evaluation scenarios." The IFB also required bidders to possess certain equipment and facilities to be considered for the contract.

¶ 3 Both Shamrock and McClure–Early Enterprises dba Western Towing ("Western") sent representatives to a pre-bid conference held by DPS to answer any questions about the IFB. The IFB stated that any objection to defects in the IFB had to be made prior to the bid opening on November 30, 1995. It further stated that any other protests had to be raised within ten days after the bidder knew or should have known of the basis for the protests. Western did not raise any objection to the IFB prior to the bid opening date.

¶ 4 Shamrock and Western were the only companies to bid for the DPS contract. Western's bid failed to respond to one of the six pricing scenarios. Shamrock had the lower bid for each of the other five scenarios. On December 18, 1995, DPS notified Shamrock that it was the successful bidder. DPS asked Shamrock to post a bond, obtain various forms of insurance, and obtain DPS' approval of Shamrock's drivers. Shamrock did all of these things, as well as purchase new equipment and hire and train new employees, in anticipation of performing the DPS contract.

¶ 5 On December 29, 1995, a month after the bids were opened and eleven days after award of the contract to Shamrock, Western filed a bid protest. Western contended, among other things, that the IFB (i) failed to include evaluation criteria as required by A.A.C. R2–7–313(B)(1)(b); (ii) failed to include language indicating that the contract would be awarded to the "lowest responsible and responsive bidder" who met the evaluation criteria as required by A.A.C. R2–7–320; and (iii) inappropriately included RFP language indicating that the contract would be awarded to the bid "most advantageous to the State." Western requested a stay of the award to Shamrock pending the resolution of its protest.

¶ 6 The State Procurement Administrator stayed performance of the contract. Lu Himmelstein ("Himmelstein"), the DPS Fi-

---

1. An IFB is one method of procuring services or supplies for public agencies. Arizona Revised Statutes Annotated ("A.R.S.") § 41–2533 (1992); Arizona Administrative Code ("A.A.C.") R2–7–313 to R2–7–325. A contract awarded under an IFB must be issued to the "lowest responsible and responsive bidder" whose bid meets the requirements and evaluation criteria set forth in the IFB. A.R.S. § 41–2533(G); A.A.C. R2–7–320.

Public agencies may also seek services and supplies from private companies through a Request for Proposals ("RFP"). A.R.S. § 41–2534 (1992); A.A.C. R2–7–326 to R2–7–334. An RFP contract is awarded to the proposal that is the "... most advantageous to the State based on the factors set forth in the Request for Proposals ..." with price being only one factor. A.R.S. § 41–2534(G); A.A.C. R2–7–334.

nance Manager, handled the Western protest. She concluded that all but one of the protest issues was untimely but found there was good cause to consider the protest despite its untimeliness. Himmelstein upheld Western's protest and canceled the contract with Shamrock. On January 24, 1996, Himmelstein wrote Shamrock and stated:

> Please be advised that the ... award has been canceled effective January 17, 1996. This cancellation is the result of a Procurement Officer's Decision rendered on that date in response to a protest filed by ... Western Towing.

DPS indicated that it would be issuing a new IFB for the contract.

¶ 7 On January 26, 1996, Shamrock appealed the decision to uphold Western's bid protest. That same day, Himmelstein sent a letter to several towing companies, including Shamrock, to arrange for interim towing services until the new IFB was prepared. In this letter, Himmelstein sought to cancel the prior contract with Shamrock "for convenience," stating:

> ... the IFB provides that the contracts awarded under the IFB are cancelable for convenience on thirty (30) days' notice. This letter will constitute such notice without regard to the outcome of the above-mentioned administrative proceeding [i.e., Shamrock's pending appeal].

¶ 8 On March 15, 1996, Himmelstein concluded that Shamrock's appeal of her decision to sustain Western's bid protest had been rendered moot by the second cancellation of the contract "for convenience." Shamrock requested a hearing by DOA to review the matter.

¶ 9 While Shamrock's appeal was pending, DPS issued a new IFB. Again, Shamrock and Western submitted bids. This time Western had the lower bid, and DPS awarded it the contract.

¶ 10 The DOA Director subsequently denied Shamrock's appeals without a hearing and upheld Himmelstein's decision. The Director concluded that A.A.C R2–7–313(B)(1)(b) was violated because the IFB failed to include evaluation criteria, failed to describe the methodology utilized in deter-

mining the successful bidders, and DPS failed to create and maintain a proper record showing the basis for determining the successful bidders as required by A.A.C R2–7–320(F). Further, the IFB improperly provided that the contract would be awarded to the bid "most advantageous to the State," rather than to the "lowest responsible and responsive bidder" meeting the evaluation criteria.

¶ 11 Shamrock requested a rehearing, which the DOA Director denied. Shamrock then sought judicial review of the administrative decisions in the superior court. When both sides moved for summary judgment, the trial court granted summary judgment in favor of the state defendants. Shamrock filed a timely notice of appeal. This court has jurisdiction over this appeal pursuant to A.R.S. section 12–2101(B)(1994).

### ISSUES

1. Did DPS abuse its discretion in sustaining the protest filed by Western and canceling the Shamrock contract for towing services?

2. Did DPS improperly cancel "for convenience" its contract with Shamrock?

### DISCUSSION

**I. DPS Lacked "Good Cause" to Consider Western's Protest.**

¶ 12 Shamrock asserts that Western lacked good cause for the untimeliness of its protest and, therefore, DPS should not have considered it. We agree.

¶ 13 Both the IFB itself and applicable regulations establish that bidders must file protests regarding errors apparent on the face of the IFB *before* bids are opened. A.A.C. R2–7–904(A)(1). All of the issues raised in Western's protest concerned errors apparent on the face of the IFB—the improper inclusion of award language applicable to RFPs, the omission of award language required for IFBs, and the omission of required evaluation criteria. Accordingly, Western's protest should have been filed prior to the bid opening. A.A.C. R2–7–904(A)(1). DPS recognized the untimeliness

of the protest[2] but found there was "good cause" to consider it.

■ ¶ 14 A belated protest may be considered under limited circumstances. A.A.C. R2–7–904 governs the "Time for Filing Protests." Subsection (A) of that provision mandates that interested parties file protests based upon alleged improprieties that are apparent on the face of the IFB *before* the bid opening. A.A.C. R2–7–904(A)(1). Subsection (D) provides for the late filing of such protests, stating:

> If the protester shows good cause, the procurement officer of the contracting agency may consider any protest that is not filed timely.

A.A.C. R2–7–904(D). Western never advanced any explanation for the untimeliness of its protest, let alone good cause. Nevertheless, Himmelstein concluded there was good cause to consider the untimely protest because she "believe[d] the lack of the IFB's evaluation criteria may have had a material effect on a bidder's ability to properly prepare a bid response."[3]

¶ 15 DPS abused its discretion in considering Western's protest. Where a procedural requirement protects important rights or interests, a good cause exception to that requirement should be construed narrowly or the exception may swallow the rule. *See Buschmann v. Schweiker*, 676 F.2d 352, 357 (9th Cir.1982). Requiring protests related to errors apparent on the face of the bid to be filed *before* the bid opening protects the integrity of the bid process. Otherwise, a bidder may wait until the bids are submitted and the contract is awarded to another candidate, then protest the bid solicitation, force another round of bidding, and adjust its

prices and strategies after it has had the opportunity to view its competitors' bids. Because allowing such belated protests is prejudicial to the initial winning bidder, bidders should object to mistakes or ambiguities in a bid solicitation before they bid. A.A.C. R2–7–904(A)(1); *see also Newport News Shipbuilding and Dry Dock Co. v. General Dynamics Corp.*, 960 F.2d 386, 395 n. 6 (4th Cir.1992) ("where omissions or inconsistencies in the contract's provisions are patent, the bidder is required to make inquiry regarding them before submitting its bid").

¶ 16 A.A.C. R2–7–904(D) permits consideration of untimely protests only "if *the protestor* shows good cause." (Emphasis added). Western never offered *any* explanation for the untimeliness of its protest. Accordingly, DPS should not have considered the protest. *City of Phoenix v. Phoenix Civil Service Board*, 169 Ariz. 256, 259, 818 P.2d 241, 244 (App.1991) (agencies have only such powers as are conferred upon them by law).

¶ 17 Moreover, Himmelstein did not find any good cause for the belatedness of the protest. Western failed to offer any basis for its untimeliness and Himmelstein acknowledged that she was unaware of any valid reason for Western's tardiness in asserting its protest. Because no evidence supported the finding of good cause for the untimeliness of the protest, Himmelstein abused her discretion in considering the protest. *See Rios Moreno v. Arizona Dept. of Economic Sec.*, 178 Ariz. 365, 368, 873 P.2d 703, 706 (App.1994).

■ ¶ 18 Himmelstein's finding of good cause was based on her conclusion that the alleged IFB errors were fundamental and severe.[4] However, the good cause which

2. Himmelstein concluded that all of Western's charges related to issues apparent on the face of the IFB and were therefore untimely except for Western's charge that DPS had failed to maintain a proper record regarding its methodology for evaluating the bids and awarding the contract. However, Western's protest does not appear to actually raise this record-keeping issue. Moreover, even if Western did raise the issue, Himmelstein testified in her deposition that the absence of a record showing the basis for the selection would not by itself have justified cancellation of the Shamrock contract. Accordingly,

Western raised all of the relevant issues in an untimely manner.

3. The DOA Director affirmed the good cause finding on the same basis.

4. Himmelstein's belief that "the lack of the IFB's evaluation criteria may have had a material effect on a bidder's ability to properly prepare a bid response" does not establish good cause for the untimeliness of the protest. If anything, this finding suggests that the IFB was so fundamentally flawed and confusing that Western reasonably did not discover the defects in the IFB or

must be found under the exception to the protest filing deadline is *good cause for the belatedness* of the protest. A.A.C. R2–7–904(D). Nothing in the regulation allows DPS to ignore protest filing deadlines if it determines that the alleged error is significant. *Id.* Such a construction of the regulation would essentially decimate the protest filing deadlines and allow bidders to challenge an IFB at any time as long as their objections were sufficiently serious. That interpretation of the protest deadlines is illogical since interested parties are more likely to notice a significant error in an IFB provision earlier in the process than an insignificant one and raise significant errors in a timely fashion.

¶ 19 Because Western failed to provide good cause for the untimeliness of its protest, DPS abused its discretion in considering it.[5]

## II. DPS Improperly Canceled "for Convenience" its Contract with Shamrock.

¶ 20 DPS asserts that even if it should not have sustained Western's protest and canceled Shamrock's contract, Shamrock's appeal of that decision is moot because thereafter DPS canceled its contract with Shamrock "for convenience". We reject this argument because we conclude the cancellation "for convenience" was improper.

¶ 21 On January 24, 1996, DPS sent Shamrock a letter stating that it was sustaining Western's protest and canceling the Shamrock contract on that basis. Two days later, Shamrock appealed that decision. DPS then sent a second letter stating that it was canceling the Shamrock contract "for convenience." Specifically, DPS' January 26 letter stated:

Finally, Section 21 (page 5) of the IFB provides that the contracts awarded under the IFB are cancelable for convenience of

thirty (30) days' notice. This letter will constitute such notice without regard to the outcome of the above-mentioned administrative proceeding [i.e., Shamrock's pending appeal].

¶ 22 DPS argues that it was entitled to cancel the contract for convenience as long as the cancellation was not in bad faith or an abuse of discretion. It asserts that Shamrock has demonstrated neither and claims that the cancellation for convenience was justified because the State Procurement Administrator had stayed the Shamrock contract pending the resolution of the administrative proceedings and DPS needed to rebid the contract to obtain other towing services.

¶ 23 Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985). DPS did not act in good faith. It invoked the cancellation for convenience provision in an effort to render moot Shamrock's appeal of its original cancellation over the bid protest. If cancellations for convenience are permissible under these circumstances, they effectively eliminate a party's appeal rights because the state agency can always cancel a contract for no reason or for an improper reason (i.e., upholding an untimely bid protest), then avoid review of that decision by invoking its cancellation for convenience provision and rendering moot the appeal of the prior decision. DPS should not be permitted to use the cancellation for convenience provision to thwart administrative or judicial review of its decisions. *Southwest Savings and Loan Association v. SunAmp Systems, Inc.*, 172 Ariz. 553, 558, 838 P.2d 1314, 1319 (App.1992) (power expressly retained under contract cannot be exercised in such a way as to

realize it had misunderstood the requirements of the IFB until after DPS awarded the contract to Shamrock. If that were the case, Western may have timely filed its protest. A.A.C. R2–7–904(B)(requiring interested parties to file protests regarding improprieties not previously apparent within 10 days of their discovery or the time within which they reasonably should have been discovered).

However, Himmelstein did not make such a finding. Rather, she expressly found that West-

ern's protest was untimely because it focused on defects apparent from the face of the IFB which should have been raised prior to the bid opening.

5. In light of our conclusion that DPS should never have addressed the bid protest in the first instance, we need not address the merits of DPS' determination that the IFB was flawed and invalid.

breach duty to act in good faith); *Prineville Sawmill Co., Inc. v. United States*, 859 F.2d 905, 912 (Fed.Cir.1988) (absolute right to reject all bids would render obligations illusory).

¶ 24 Cancellation for convenience, as used here, also creates the impression that the contract was illusory. DPS repudiated its contract with Shamrock as of January 17, 1996 by a letter on January 24, thereby giving Shamrock a claim for damages for breach of contract. A party breaching an agreement cannot avoid liability for that breach by subsequently invoking a reserved, unilateral power to cancel the contract.

> A party who has reserved a power of termination [i.e., the right to terminate a contract] loses that power if he himself commits such a breach as goes to the essence and discharges the other party. A subsequent notice of termination has no effect upon the other party's right to full damages for the existing total breach.

6 Corbin on Contracts section 1266 (1962). If DPS could avoid liability simply by canceling "for convenience" those contracts which it has already breached, it could breach any contract with impunity and escape its obligations without reason. Such contracts would be entirely illusory. *See Prineville*, 859 F.2d at 912.

¶ 25 DPS also asserts that the cancellation for convenience was necessary because it needed to obtain other towing services in light of the stay of the Shamrock contract pending the outcome of the appeal. We reject this assertion for two reasons. First, interim towing services had been arranged for the duration of the appeal.[6] Therefore, DPS was not in imminent need of towing services and did not have to rebid the contract at that time. Second, this reasoning also basically abrogates Shamrock's appeal

rights. If a cancellation merely "for convenience" may be invoked whenever a bid is protested and a contract is stayed, the contract holder is left without any recourse for an improper bid protest and cancellation. The appropriate remedy for DPS was the one initially taken by DPS—the provision of interim towing services during the pendency of the bid protest appeal. That measure provided DPS with the needed services and preserved the status quo of the parties until an administrative officer or court could determine the legality of the bid protest and DPS' resulting cancellation of the Shamrock contract.

## CONCLUSION

¶ 26 DPS should not have considered the Western bid protest because it was untimely and lacked any good cause explanation for the untimeliness. In addition, DPS' second cancellation of the Shamrock contract for convenience was improper; it did not render moot Shamrock's appeal of the initial protest-based cancellation. We thus reverse the decision of the trial court and remand for entry of judgment in favor of Shamrock.

¶ 27 Shamrock seeks an award of its attorneys' fees pursuant to A.R.S. sections 12–341.01(A) (1992)[7] and 12–348(A)(2) (Supp.1997).[8] Contingent upon Shamrock's compliance with Rule 21, Arizona Rules of Civil Appellate Procedure, we award Shamrock its fees under A.R.S. section 12–348(A)(2).

CONCURRING: SARAH D. GRANT, Judge, and E.G. NOYES, Jr., Judge.

---

6. DPS had arranged to have several towing companies, including Western and Shamrock, provide towing services on a rotation basis until it resolved the bid dispute.

7. This statute vests a court with discretion to award fees to the prevailing party in a contested action arising out of a contract. A.R.S. § 12–341.01(A).

8. This statute provides:

In addition to any costs which are awarded as prescribed by statute, a court *shall* award fees and other expenses to any party other than this state or a city, town or county which prevails by an adjudication on the merits in ... [a] court proceeding to review a state agency decision. ...

A.R.S. § 12–348(A)(2) (emphasis added).