# IN THE COURT OF APPEALS OF IOWA

No. 23-1039
Filed October 30, 2024

**INMATE CALLING SOLUTIONS, LLC d/b/a ICSOLUTIONS,**
        Petitioner-Appellant,

**vs.**

**IOWA COMMUNICATIONS NETWORK,**
        Respondent-Appellee,

**and**

**SECURUS TECHNOLOGIES, INC.,**
        Intervenor.
_____

        Appeal from the Iowa District Court for Polk County, Coleman McCallister,

Judge.


        A party seeks judicial review of an agency proceeding.  **AFFIRMED.**


        Mark A. Schultheis and Patrick B. White of Schultheis White, PLC, Des

Moines, for appellant.

        Brenna Bird, Attorney General, Andrew E. Steffensmeier (until withdrawal)

and J. Bradley Horn (until withdrawal), Assistant Attorneys General, Patrick C.

Valencia, Deputy Solicitor General, and Breanne A. Stoltze, Assistant Solicitor

General, for appellee.

        Micheal R. Reck and Mariah L. Sukalski of Belin McCormick, P.C., Des

Moines, for intervenor.

        Heard by Greer, P.J., and Ahlers and Badding, JJ. Langholz, J., takes no

part.

**AHLERS, Judge.**

In 2020, the Iowa Communications Network (ICN) issued a request for proposal seeking bids from companies to provide communication services to the Iowa Department of Corrections (DOC) for the benefit of incarcerated individuals. The services sought included giving incarcerated individuals telephone access in addition to tablets and video visitation. Three companies submitted proposals to the ICN. Those companies were Inmate Calling Solutions (Inmate Calling), the company that was then providing the DOC with communication services; Securus Technologies, Inc. (Securus); and a third company.

The DOC initially issued a notice of intent to award the contract to Securus. Inmate Calling challenged the notice of intent via agency review with the Iowa Telecommunications and Technology Commission (ITTC).[1] The ITTC rescinded the initial notice of intent and directed the ICN to rescore the proposals previously submitted by the companies using different evaluators to avoid the perception of bias.[2] A new set of evaluators rescored the proposals, and again the evaluators scored the Securus proposal the highest. The director of the DOC then issued another notice of intent to Securus.

Inmate Calling again sought agency review of the process, this time challenging multiple aspects of the bid process. Following a hearing, an administrative law judge issued a proposed decision rejecting Inmate Calling's challenges. Inmate Calling appealed that ruling to the ITTC, which adopted the

---

[1] The ITTC's purpose is "to supervise the management, development, and operation of" the ICN. Iowa Code § 8D.3(1) (2022).
[2] The ITTC clarified that the ICN was also free to cancel the request for proposal and reissue the procurement.

administrative law judge's proposed decision as the final agency decision. Inmate Calling petitioned for judicial review under Iowa Code chapter 17A (2022). The district court denied the petition, and Inmate Calling appeals.

## I.      Scope and Standard of Review

We review district court rulings on judicial review of agency decisions under Iowa Code chapter 17A. *Chavez v. M.S. Tech. LLC*, 972 N.W.2d 662, 666 (Iowa 2022). We apply section 17A.19(10) to determine whether we come to the same conclusions as the district court. *Ghost Player, LLC v. Iowa Dep't of Econ. Dev.*, 906 N.W.2d 454, 462 (Iowa 2018). When reviewing the agency's interpretation of the Iowa Code, we review for legal error when the legislature has not clearly vested the agency with the authority to interpret a given chapter. *See Chavez*, 972 N.W.2d at 666. "[W]e accept the [agency']s factual findings when supported by substantial evidence." *Bluml v. Dee Jay's Inc.*, 920 N.W.2d 82, 84 (Iowa 2018). "'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1).

## II.      Discussion

### A.      Statutory Authority

As part of what the ICN describes as a "kitchen-sink effort" to challenge the bid process here, Inmate Calling argues the entire request-for-proposal process is invalid because the ICN lacks authority to issue a request for proposal on behalf of the DOC. Inmate Calling contends that the ICN's authority is limited to that granted by the legislature in the Iowa Code. On that point, we agree. *See* Iowa

Code § 17A.23(3) ("An agency shall have only that authority or discretion delegated to or conferred upon the agency by law and shall not expand or enlarge its authority or discretion beyond the powers delegated to or conferred upon the agency."); *Brakke v. Iowa Dep't. of Nat. Res.*, 897 N.W.2d 522, 533 (Iowa 2017) ("An agency possesses no common law or inherent powers. The power of the agency is limited to the power granted by statute." (internal citation omitted)). But we disagree with Inmate Calling's argument that the Iowa Code doesn't give the ICN the authority to issue a request for proposal on behalf of the DOC.

Where we disagree with Inmate Calling is its contention that it may question ICN's statutory authority to issue a request for proposals on behalf of the DOC at this point in the proceedings. ICN previously issued a request for proposals on behalf of the DOC that resulted in Inmate Calling receiving the contract. Inmate Calling never questioned the ICN's statutory authority then. And with respect to the present request for proposal process, Inmate Calling did not challenge ICN's statutory authority when ICN issued the request for proposals or when it brought its first challenge before ITTC. It was only once Inmate Calling failed to secure the notice of intent for a second time that it claimed a fundamental fault in the process.

We conclude that Inmate Calling's failure to raise its statutory authority arguments earlier in the process amounts to waiver on this issue. *See, e.g.*, *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) ("We also hold that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action . . . ."). In reaching that conclusion we find persuasive an opinion

from the Arizona Court of Appeals, quoted by the administrative law judge.[3]  *See*

*Arizona's Towing Pros., Inc. v. State*, 993 P.2d 1037, 1040 (Ariz. Ct. App. 1999).

In that opinion, the court explained:

> Requiring protests related to errors apparent on the face of the bid to be filed *before* the bid opening protects the integrity of the bid process.  Otherwise, a bidder may wait until the bids are submitted and the contract is awarded to another candidate, then protest the bid solicitation, force another round of bidding, and adjust its prices and strategies after it has had the opportunity to view its competitors' bids.  Because allowing such belated protests is prejudicial to the initial winning bidder, bidders should object to mistakes or ambiguities in a bid solicitation before they bid.

*Id.*  This rationale is sound, and we adopt it as our own.  Applying this rationale to

the present case, Inmate Calling was required to bring its statutory-authority

challenges at the beginning of the bidding process and before it submitted a bid.

Because Inmate Calling raised no challenge to ICN's statutory authority until *after*

it submitted its bid and *after* its first challenge to ITTC, it has waived its statutory-

authority claims.

## B.     Failure to Comply with The Request for Proposal

Inmate Calling also contends the ICN failed to comply with the terms of the

request for proposal itself.  *See* Iowa Code § 17A.19(10)(d) (stating that "[t]he court

shall reverse, modify, or grant other appropriate relief from agency action . . . if it

determines that substantial rights of the [entity] seeking judicial relief have been

prejudiced because the agency action is . . . [b]ased upon a procedure or decision-

making process prohibited by law or was taken without following the prescribed

---

[3] Because the ITTC adopted the proposed decision of the administrative law judge as the agency's final decision, as a practical matter, we are reviewing the administrative law judge's work and refer to it accordingly.

procedure or decision-making process").[4]  Inmate Calling argues an evaluation committee tasked with scoring and evaluating the proposals failed to assess the costs and pricing contained in the proposals.

The request for proposal explained that "[t]he evaluation committee will consider all information provided in the proposals when making its recommendation and the committee may also consider relevant information from other sources."  The request for proposal went on to explain:

> The bid proposals will be evaluated using a scoring system which will be made available at the time of the Bid Opening.  Evaluation of bid proposals will be based on, but not limited to, the general criteria, which are listed below in no particular order of importance.  It shall be Vendor's responsibility to insure that the proposal offered fully iterates the Vendor ability to perform the [request for proposal] requirements, and to clearly show how the Vendor would perform the [Incarcerated Individual Communications Systems] task.  The ICN shall not necessarily award the contract to the Vendor offering the lowest cost to the State.  The ICN may award a contract to the most responsible Vendor meeting the requirements of this [request for proposal] and which in the determination of both ICN and DOC provides the best value to the State after considering price and compliance with the provisions of this request.
>     The general evaluation criteria include, but are not limited to these general areas:
>         Vendor's Technical Proposal
>         Background information
>         Experience
>         Personnel
>         Financial information
>         Business information
>         Legal/administrative information
>         Pricing
>         Product Demonstration / Evaluation
>         Best and Final Offer—if requested

---

[4] Inmate Calling also cites section 17A.19(10)(h), (i), and (j) as potential bases for reversal but fails to develop any corresponding arguments.  That failure to develop corresponding arguments amounts to waiver under those bases.  *See* Iowa R. App. P. 6.903(2)(g)(3).

The request for proposal clarified,

> The ICN shall not necessarily award the contract to the Vendor offering the lowest cost to the ICN. The ICN may award a contract to the most responsible Vendor meeting the requirements of this [request for proposal] and which, in the sole discretion of the ICN, provides the best value to the State after considering price and compliance with the provisions of Chapter 3 and 4 [of the request for proposal].

Inmate Calling argues the evaluation committee was required to consider pricing and cost to the DOC, the inmates, and the inmates' family and friends utilizing the communication services, but the committee failed to do so. The administrative law judge found the evaluation committee considered all necessary factors, including cost and pricing, and that finding is supported by substantial evidence, so we reject Inmate Calling's challenge. Within the record is the score sheet evaluating each proposal. That scoresheet showed each member of the evaluation committee evaluated each proposal's "cost components and variables," which included each prospective vendor's "'a la cart' price list of all services (phone call, video call, text, streaming, and e-mail) and related equipment . . . applicable to the offender . . . [and] to those outside the DOC facility as they communicate with the incarcerated individual."

Inmate Calling also complains that the director of the DOC did not review the evaluation committee's recommendation and select the winning vendor as required by the request for proposal. Its complaints are rooted in the fact that the director admitted she did not personally review the documents created by the evaluation committee and that she did not specifically delegate the task of reviewing the documentation to a subordinate. But she explained that much of the request-for-proposal work was delegated multiple levels below her. And when she

received the evaluation committee's assessment, she forwarded it to her chief of staff[5] for his review. She "relied on [her] project leader and [her] staff to make the best choices for this." Then she discussed the results of the evaluation committee's work with her chief of staff who answered her questions. So she took his guidance and selected Securus as the provider. This evidence constitutes substantial evidence supporting the administrative law judge's finding that the director reviewed the proposals in her discussions with her chief of staff and decided to adopt the recommendation of the evaluation committee.

However, Inmate Calling contends that the review of the second evaluation committee's assessment by the DOC director's chief of staff was improper because he served as an evaluator when the proposals were initially reviewed and scored. It argues his involvement mandates rescission and revocation of the notice of intent. *See* Iowa Code § 17A.19(10)(e). We disagree. When the ITTC ordered the proposals be rescored, it merely required new evaluators to rescore the proposals. While the chief of staff was an evaluator the first go around, he did not take any part in the second evaluation process. Instead he simply reviewed the second evaluation committee's findings and discussed the findings with the director. His presentation of the evaluation committee's recommendation to the director does not require revocation of the notice of intent.

### C. Decision to Award Contract to Securus

Finally, Inmate Calling argues that the decision to award the contract to Securus was arbitrary and capricious, without a rational basis, and an abuse of

---

[5] This individual was previously the Communications Director and Government Affairs Liaison for the DOC.

discretion. "We may reverse, modify, or grant other appropriate relief from agency action if we determine that the substantial rights of the petitioner have been prejudiced because the agency action is unreasonable, arbitrary, capricious, or an abuse of discretion." *Banilla Games, Inc. v. Iowa Dep't. of Inspections & Appeals*, 919 N.W.2d 6, 18–19 (Iowa 2018) (citing Iowa Code § 17A.19(10)(n)). "A decision is arbitrary or capricious when 'it is taken without regard to the law or facts of the case.' 'Discretion is abused when it is exercised on grounds clearly untenable or to an extent clearly unreasonable.'" *Id.* at 19 (citations omitted).

Inmate Calling contends that Securus was chosen by default—again arguing that the DOC director did not select the winner as required by the request for proposal, so the notice of intent simply went to Securus because its bid was scored the highest by the evaluation committee. As previously discussed, substantial evidence supports the conclusion that is not what occurred. Instead, substantial evidence supports the finding that the DOC director tasked her chief of staff with reviewing the evaluation committee's summary when she forwarded the information to him, the two then had a conversation about it, and she then adopted the evaluation committee's recommendation. The issuance of the notice of intent was not made by default.

Next, Inmate Calling challenges the thoroughness of the evaluation committee and DOC director's review of costs associated with the Securus proposal, noting its proposal included provisions for collect calls that would require

individual consumers to pay taxes and fees.[6] First, we reiterate that the evaluation committee considered cost and pricing when its members scored the proposals from the competing bidders. And to the extent that Inmate Calling points out the potential for Securus to charge excessive fees, the amount of those fees can continue to be negotiated as can the viability of utilizing a collect calling option. Simply because the Securus proposal includes details that are likely to be negotiated following issuance of the notice of intent or options that are not likely to be selected by the DOC in a final agreement does not mean the notice of intent was awarded arbitrarily, capriciously, without a rational basis, or as a result of an abuse of discretion.

With respect to the use of the ICN, Inmate Calling argues because the Securus proposal left open the possibility it would not use the ICN at all if it could not provide sufficient bandwidth for the requested tablet service, the issuance of the notice of intent to Securus was arbitrary and capricious, without a rational basis, and an abuse of discretion. Again, we disagree. The request for proposal explained,

> The ICN will consider exact replacement systems, hybrids or alternatives to the current System, as long as the offered System meets or exceeds the requirements listed within this [request for proposal]. Therefore, Vendors are encouraged to submit proposals that can offer the State of Iowa savings, better incarcerated individual communication services, additional revenues and any other benefits the Vendor may have to offer for consideration.

---

[6] We note the request for proposal stated, "No collect calling in any form is anticipated during this contract." This did not bar any proposal from including options for a collect call program.

With respect to telecommunication services, the request for proposal included a clarification, which stated: "The ICN is a FCC recognized common carrier. The ICN will be the carrier of the local traffic and will use contracted telecommunications providers for the interstate and international toll services. The ICN and DOC will work with the vendor to file any state or federal board."

Nonetheless, the request for proposal contemplated that a different type of system other than the current ICN may actually be a superior option and permitted vendors to present various system options in their proposals. Simply because Securus's proposal included a provision that it would only use the ICN if it had sufficient bandwidth for the tablet service did not make the decision to issue the notice of intent to Securus arbitrary, capricious, irrational, or an abuse of discretion. The request for proposal sought out services for telephone calls, video visitation, and tablet usage for incarcerated individuals—more communication options than previously offered.[7] This expansion in communication options would necessarily require an updated network to function. So it was reasonable for Securus to condition its use of the ICN on the availability of enough bandwidth, otherwise it would not be able to provide the services requested in the request for proposal.

In its last complaint, Inmate Calling argues the evaluation committee failed to assess the potential revenue that could be generated for the state under each proposal. A purchasing agent for the ICN, who issued this request for proposal, explained the request for proposal was not intended to identify a revenue generating communication system for the DOC. He explained that "'value' to the

---

[7] Requests for proposal for previous service contracts only covered "phone systems."

state is not revenues.  It's something that operates on a consistent basis that provides the inmates, the families, and the institutions and the DOC a fair and reasonable service."  So the DOC's main goal was not to make money off of the communication system; it just needed the system to be self-sustaining.  And contrary to Inmate Calling's claims that the evaluation committee did not consider potential revenue to the state under each vendor proposal, a member of the evaluation committee testified that they were aware that Inmate Calling's proposal would have provided the state with more revenue than the Securus proposal. Accordingly, substantial evidence supports the conclusion that the evaluation committee did consider what proposal would generate the most revenue for the state, but it was just not a deciding factor for the committee when making its recommendation.

## III.    Conclusion

We have considered Inmate Calling's appellate arguments, including those not specifically discussed herein, and we conclude Inmate Calling has established no basis for relief upon judicial review.[8]  We conclude Inmate Calling waived its statutory-authority challenges.  The parties involved did not violate the terms of the request for proposal.  The decision to issue the notice of intent to Securus was not arbitrary and capricious, without a rational basis, or an abuse of discretion.

**AFFIRMED.**

---

[8] Because Inmate Calling does not identify any error in the bid process, we need not address its prejudice argument.