# IN THE SUPREME COURT OF IOWA

No. 18–0317

Filed November 16, 2018

**JASON BLUML,**

      Appellant,

vs.

**DEE JAY'S INC.** d/b/a **LONG JOHN SILVERS** and
**COMMERCE & INDUSTRY INSURANCE COMPANY,**

      Appellees.

---

Appeal from the Iowa District Court for Pottawattamie County, Jeffrey L. Larson, Judge.

A workers' compensation claimant appeals a district court ruling affirming the commissioner's denial of benefits. **REVERSED AND REMANDED.**

Douglas R. Novotny of Novotny Law, LLC, Omaha, NE, for appellant.

Jean Z. Dickson and Paul M. Powers of Betty, Neuman & McMahon, P.L.C., Davenport, for appellees.

**MANSFIELD, Justice.**

In this case, we return to the question of when an idiopathic workplace fall is compensable. We last addressed this issue nearly two decades ago.

A fast-food employee who was handling a customer order had a seizure and fell backwards directly to a ceramic tile floor. He suffered serious head injuries. The workers' compensation commissioner declined to award benefits, reasoning that idiopathic falls from a standing or walking position to a level floor do not arise out of employment under our workers' compensation law. The employee petitioned for judicial review, and the district court affirmed the commissioner for the same reasons.

On appeal, we reverse. We conclude there is no blanket rule rendering certain categories of workplace idiopathic falls noncompensable, so long as the employees proves that a "condition of his [or her] employment increased the risk of injury." *Koehler Elec. v. Wills*, 608 N.W.2d 1, 5 (Iowa 2000). Because the commissioner incorrectly treated a factual issue as a legal matter, we remand for further agency proceedings.

## I. Facts and Procedural History.

Jason Bluml is a high school graduate who has worked a number of supervisor jobs in fast-food restaurants. In approximately 2007, Bluml began to have seizures. In one instance, Bluml experienced a seizure while driving, which resulted in a crash into a house. Bluml was prescribed antiseizure medicine. In the months leading up to February 2012, Bluml had not been taking his antiseizure medication regularly and also had some issues with alcohol abuse.

On February 15, 2012, Bluml—then 38 years old—was working at a Long John Silver's in Council Bluffs as shift manager. Bluml had called in late for work that evening because he was not feeling well. About two

hours into his shift, Bluml was working behind the customer counter. According to witnesses, Bluml experienced a full-body seizure. He fell straight backward onto the ceramic tile floor of the restaurant, striking the back of his head. Witnesses heard Bluml's head hit the tile floor. In addition to seeing blood on the floor, they saw nearby a paper bag containing a customer order that Bluml apparently had in his hand when he fell. Bluml was taken to the emergency room where he was found to have an acute subarachnoid hemorrhage and required intubation.

Bluml was transferred to the University of Nebraska Medical Center for further care. On February 18, doctors performed a left decompressive craniectomy. On March 12, Bluml began a course of rehabilitation for his brain injuries. On June 6, he underwent a left-sided cranioplasty. Following his release, Bluml went to work in the fast-food business again, although he still has significant cognitive impairments, especially with reading, memory, and judgment. Bluml presently works as a cook rather than as a manager. He continues to suffer from seizures and to struggle with alcohol abuse.

On February 7, 2014, Bluml filed a petition for arbitration before the Iowa Workers' Compensation Commission, seeking workers compensation benefits from Dee Jays Inc. d/b/a Long John Silvers, the employer, and Commerce & Industry Insurance Company, the carrier, relating to the February 15, 2012 incident. The case went to hearing, and on January 13, 2016, the deputy commissioner issued his arbitration decision.

In that decision, the deputy ruled that Bluml had failed to carry his burden of proof that he had sustained an injury that arose out of and in the course of employment. The deputy noted that Bluml had suffered an idiopathic fall, i.e., a fall due to a personal condition, and concluded, "[T]he

law appears clear that idiopathic falls to level surfaces are not compensable under Iowa law."

Bluml appealed to the commissioner. On July 20, 2017, the commissioner affirmed the deputy. The commissioner observed, "There is no real dispute that the injuries sustained by claimant were rendered more serious because claimant's fall occurred on a ceramic tile floor inside defendant-employer's restaurant." He commented that a minority rule "hold[s] that idiopathic falls on a level floor are compensable when the hardness of the floor affects the severity of the injury," whereas a majority of jurisdictions

> hold that idiopathic falls on a level floor are not compensable regardless of the hardness of the floor on the theory that a floor presents a risk or a hazard encountered everywhere and that such risks and hazards presented by a level floor are the same risks which confront all members of the public.

The commissioner acknowledged that the issue appears to be one of "first impression" in Iowa. Ultimately, the commissioner found "the authority and the arguments presented by defendants in support of the majority rule on this issue are more persuasive."

On August 16, Bluml petitioned for judicial review in the Iowa District Court for Pottawattamie County. On January 25, 2015, the district court affirmed the commissioner's decision, after discussing much of the same caselaw cited by the commissioner and agreeing with the commissioner's "interpretation of the applicable law." Bluml appealed, and we retained the appeal.

## II. Standard of Review.

The question here is whether an idiopathic fall is compensable because it "aris[es] out of . . . employment." Iowa Code § 85.3(1) (2011). We will review the commissioner's legal interpretation of this section for

errors at law. *See* Iowa Code § 17A.19(10)(*c*). "In recent years, we have repeatedly declined to give deference to the commissioner's interpretations of various provisions of chapter 85." *Iowa Ins. Inst. v. Core Group of Iowa Ass'n for Justice*, 867 N.W.2d 58, 65 (Iowa 2015). The language at issue is not technical or within the special expertise of the commissioner. *See Renda v. Iowa Civil Rights Comm'n* 784 N.W.2d 8, 13–14 (Iowa 2010). Indeed, we have previously held that this phrase should be interpreted de novo by our court on administrative review. *Xenia Rural Water Dist. v. Vegors*, 786 N.W.2d 250, 253 (Iowa 2010). However, we accept the commissioner's factual findings when supported by substantial evidence. *See* Iowa Code § 17A.19(10)(*f*).

**III.  Analysis.**

It is not disputed that this case involves an idiopathic fall. Bluml fell on February 15, 2012, because he had a seizure. The seizure was unrelated to Bluml's work. In fact, Bluml had a history of seizures, and it was happenstance that this seizure occurred while Bluml was working.

**A.  Idiopathic Falls and the Increased-Risk Standard.** Although the parties and the commissioner devote considerable attention to nonprecedential, unpublished opinions of the court of appeals, we will focus on the published opinions. The only published precedent in Iowa on idiopathic falls is *Koehler Electric*, 608 N.W.2d 1. There the claimant fell from a ladder to a cement floor while wiring a customer's air conditioning unit. *Id.* at 2. The claimant sustained serious head and shoulder injuries. *Id.* Yet, the claimant appeared to be unconscious when he fell, and it was determined that the cause of the fall was alcohol withdrawal. *Id.* The commissioner nonetheless awarded workers' compensation benefits, reasoning that the claimant's "employment or working environment placed him in a position that increased the effects of his fall." *Id.* at 2–3.

On appeal, we sustained the award. *Id.* at 5. First, we noted that we had not previously addressed the compensability of idiopathic falls. *Id.* at 4. We acknowledged that "[g]enerally injuries resulting from risks personal to the claimant are not compensable." *Id.* Yet we noted an exception to this rule, where "an employee . . . is placed in a position that aggravates the effects of an idiopathic fall, such as a height." *Id.*

We then invoked what is known as the increased-risk rule. We held that to recover for an idiopathic fall, the claimant needed only prove "that a condition of his employment increased the risk of injury." *Id.* at 5. In other words, the claimant did not need to prove "the precise injuries that were caused by the workplace condition, such as the elevation from which the claimant fell." *Id.*

Additionally, we found that no expert testimony was needed in the particular case "because the fact finder could conclude based on common experience that the risk of injury is greater when one falls from a height of four to five feet onto a concrete floor than when one falls on level ground." *Id.*

The ultimate question, of course, is whether the claimant has suffered an injury "arising out of and in the course of the employment." Iowa Code § 85.3(1). The increased-risk test that we relied upon in *Koehler Electric* is an interpretation of that phrase. 1 Arthur Larson et al., *Larson's Workers Compensation Law* § 3.01, at 3-4 (2018) [hereafter Larson]. It is "the prevalent test in the United States today." *Id.* § 3.03, at 3-5.

We have used that test in other cases. For example, in *Miedema v. Dial Corp.*, we held that a back injury suffered by an employee while using the restroom at work did not arise out of employment because the employee "fail[ed] to establish that use of [the] restroom exposed him to any increased risk of injury." 551 N.W.2d 309, 311 (Iowa 1996). In *Meyer*

*v. IBP, Inc.*, we held that an employee who developed carpal tunnel syndrome while working in a slaughterhouse had a compensable injury. 710 N.W.2d 213, 225 (Iowa 2006). Citing *Koehler Electric*, we observed,

> [I]f the injury manifested during [the claimant's] first *minute* of popping tongues as an IBP employee, it still would have arisen out of his employment because his job duties with IBP, as shown by the record, increased the risk that carpal tunnel syndrome would manifest.

*Id.*

However, in *Lakeside Casino v. Blue*, we confronted a case where the claimant, a cocktail server, had injured her ankle while stumbling on stairs. 743 N.W.2d 169, 171 (Iowa 2007). We discussed *Miedema* and *Meyer* but not *Koehler Electric*. *Id.* at 174, 175 n.3. We said that subject to "limited exceptions," we had previously "abandoned" or "discarded" the increased-risk test in favor of the actual-risk test. *Id.* at 174–75, 177 n.7. Although we disavowed the positional-risk doctrine, which is a third test, we held in *Lakeside Casino* that the employee's claim was compensable under the actual-risk doctrine. *Id.* at 176–77. We explained,

> Blue injured her ankle when she stumbled as she was walking down stairs. It was not disputed that these stairs were a condition existing in her workplace. Moreover, it is a matter of common knowledge that stairs pose an actual risk of stumbling or falling when traversing them, similar to the risk posed by going up and down ladders. Although Blue did not stumble due to any particular defect in or condition of the stairs, it is not necessary under Iowa case law that the stairs in Blue's workplace be more dangerous than a typical set of steps. In addition, it matters not that she stumbled through her own inattention. Blue's misstep was causally related to the fact that she was walking on stairs, and therefore, the Commissioner rationally concluded her injury arose out of her employment.

*Id.* at 177 (footnote omitted).

*Lakeside Casino* did not involve an idiopathic fall, *i.e.*, a fall due to the employee's personal condition. Rather, the claimant "tripped when she

lost her footing on the stairs." *Id.* We do not believe *Blue* intended to overrule the legal standards set forth in *Koehler Electric* for idiopathic falls. Notably, Larson generally prefers the actual-risk rule over the increased-risk rule, but not for idiopathic falls. Larson § 3.04, at 3-6; *id.* § 9.01[1], at 9-2 to 9-3. He finds that idiopathic falls present a "basically different" question from unexplained falls and there is "general agreement" that they are subject to the "increased danger," i.e., increased-risk, rule. *Id.* § 9.01[1], at 9-2 to 9-3. Larson explains,

> The idiopathic-fall cases begin as personal-risk cases. There is therefore ample reason to assign the resulting loss to the employee personally. . . . To shift the loss in the idiopathic-fall cases to the employment, then, it is reasonable to require a showing of at least some substantial employment contribution to the harm.

*Id.* § 9.01[4][b], at 9-8. In Larson's view, the law "rightly requires that the employment contribute something to the risk, before pronouncing the injury one arising out of the employment." *Id.* at 9-9.

**B. A Legal or a Factual Determination?** Having said that, in this case the deputy, the commissioner, and the district court all concluded *as a matter of law* that idiopathic falls onto level floors are not compensable. The deputy stated, "[I]diopathic falls (falls due to personal conditions) onto level surfaces are generally not held compensable." He concluded that "the law appears clear that idiopathic falls to level surfaces are not compensable under Iowa law." Likewise, the commissioner agreed that "an idiopathic fall on a level floor generally is not compensable," and found "the authority and the arguments presented by defendants in support of the majority rule . . . more persuasive than the authority and arguments presented by claimant in support of the minority rule." The district court canvassed the same legal authorities and found "the commissioner did not

erroneously interpret the law when he determined Mr. Bluml's injury did not arise out of his employment."

We are not persuaded this approach is correct. Logically, whether the condition of a floor, just like any other workplace condition, posed an increased risk of injury should be determined factually, rather than predetermined by some legal "rule." Our *Koehler Electric* decision required only that "the employment must contribute to the *hazard* of the fall." 608 N.W.2d at 5. It did not foreclose the possibility that an especially hard floor could amount to such a hazard. *See id.*

True, Larson points out that "[a] distinct majority of jurisdictions . . . have denied compensation in level-fall cases." Larson § 9.01[4][a], at 9-7. Still, [a] significant minority . . . make awards for idiopathic level-floor falls . . . ." *Id.* at 9-7 to 9-8. Larson further notes,

> One factual question that figures in a number of cases is whether, in a level-floor fall to a concrete, tile, or steel surface, the fact of hardness alone should suffice as the added employment hazard. As the list of cases on level-floor falls indicates, denials have issued in a number of instances where concrete or steel floors were present, and the fact of hardness has in some of these cases been specifically rejected as a source of increased risk. There is also respectable authority for the view that hardness in itself adds to the hazard of a level-floor fall . . . .
>
> . . . .
>
> For whatever it is worth, the observation may be made that of the four authentic American cases supporting level-floor awards, one involved a tile floor, two involved a concrete floor, and the fourth, although it involved a wood floor, employed with the greatest caution the term "hard floor" at every point, leaving the impression that the hardness of the floor was an integral part of the risk.

*Id.* § 9.01[4][e], at 9-12 to 9-13 (footnotes omitted).

The fact that a majority of appellate decisions have not allowed recovery for idiopathic falls regardless of the hardness of the floor gives us

some pause. But it is helpful to delve into the decisions that espouse this majority position. In *Evans v. Hara's, Inc.*, the Idaho Supreme Court found that a worker's idiopathic fall onto a cement fall was not compensable, reasoning,

> A fall onto a level surface precipitated by an alcohol withdrawal seizure is just as likely to happen at home, on the sidewalk, or in any other situs which a worker may frequent outside of the workplace. We therefore hold that an injury resulting from an idiopathic fall at the workplace does not arise out of employment and is not compensable under our worker's compensation system without evidence of some contribution from the workplace. In so holding, we are consistent with the majority of jurisdictions which have considered this question.

849 P.2d 934, 941 (Idaho 1993). It is true that an idiopathic fall would be just as likely to happen outside the workplace; yet, the court's opinion did not address the possibility that the surface of the floor at the place of employment increased *the risk of harm* from such a fall. *See generally id.*

In *Prince v. Industrial Commission*, the Illinois Supreme Court affirmed the industrial commission's denial of benefits for an idiopathic fall to a concrete floor. 155 N.E.2d 552, 554 (Ill. 1959). The decision was fact-based; the court affirmed the commission's factual finding as "not against the manifest weight of the evidence." *Id.* The court declined the claimant's argument that she should prevail "as a matter of law." *Id.*

*Luvaul v. A. Ray Barker Motor Co.* upheld a trial court's denial of benefits following an employee's idiopathic fall to a concrete floor. 384 P.2d 885, 890–91 (N.M. 1963). The New Mexico Supreme Court explained, "Any person who falls, if not prevented from doing so, will strike the ground or floor. That the floor at the place of employment was concrete should not, in our opinion, alter the rule applicable in the circumstances." *Id.* at 890.

*Zuchowski v. United States Rubber Co.*, seemingly like *Luvaul*, adopted a strict legal rule that idiopathic falls to level floors are not compensable. 229 A.2d 61, 66 (R.I. 1967). The Rhode Island Supreme Court elaborated,

> The fact that the floor where petitioner fell was cement does not, in our opinion, supply the necessary element of special risk which would make his injuries compensable. Floors of all nature and kind are a normal and customary part of one's life be one at home or work. We do not believe that the composition of the floor in and of itself should be the determining factor as to whether there is a special risk incident present in one's employment. Such a criterion would send this court into the endless wilds of speculation.

*Id.*

In *Bagwell v. Ernest Burwell, Inc.*, the South Carolina Supreme Court held that the workers' compensation commission erred in awarding benefits for the death of a worker who suffered an idiopathic fall and fell backward onto a concrete floor, causing his death. 88 S.E.2d 611, 612, 617 (S.C. 1955). Acknowledging that "[n]umerous cases can be found sustaining either view," the court decided,

> We are not prepared to accept the contention that, in the absence of special condition or circumstances, a level floor in a place of employment is a hazard. Cement floors or other hard floors are as common outside industry as within it.

*Id.* at 615. Essentially, the court determined as a matter of law based on its own experience that a level, concrete floor does not pose an additional degree of risk. *See id.*

*Kraynick v. Industrial Commission,* upheld the dismissal of a claim for workers' compensation benefits following the decedent's idiopathic fall to a hard tile floor. 148 N.W.2d 668, 670–71 (Wis. 1967). Applying its own standard for idiopathic falls, under which the employee had to show that his work "require[d] him to be in a hazardous situation," the Wisconsin

Supreme Court noted that "a level surface is not an area of special danger." *Id.* at 671. The court quoted from the *Bagwell* decision approvingly. *Id.* Like *Bagwell*, this decision appears to be legally based; furthermore, the court appeared to use a legal standard—"special danger"—different from the increased-risk standard we announced in *Koehler Electric*. *See id.*

In *Gates Rubber Co. v. Industrial Commission*, the Colorado Court of Appeals reversed the compensation commission's award of benefits and found that a concrete floor did not constitute an "extra" or "special" hazard of employment. 705 P.2d 6, 7 (Colo. App. 1985). The court said, "Level concrete surfaces, such as that upon which Bigley struck his head, are encountered on sidewalks, parking lots, streets, and in one's home. Such a ubiquitous condition does not constitute a special risk of employment." *Id.* Thus, as in *Kraynick*, the court found that a concrete floor was not a "special" risk, utilizing a standard that may not have been the same as Iowa's increased-risk standard. *See id.*

*Kovatch v. A.M. General* upheld the denial of a widow's claim for benefits following a fatal idiopathic fall to a concrete floor. 679 N.E.2d 940, 941 (Ind. Ct. App. 1997). In a footnote, the Indiana Court of Appeals cited an earlier Indiana Supreme Court case and, without further elaboration, "reject[ed] [the employee's] contention that the hardness of the concrete floor in itself created an increased risk, thereby making his death compensable." *Id.* at 944 n.6 (citing *Pollock v. Studebaker Corp.*, 105 N.E.2d 513, 513 (Ind. 1952)). The prior Indiana Supreme Court case, however, promulgated no legal rule; instead, it affirmed a denial of benefits exclusively on factual grounds. *Pollock*, 105 N.E.2d at 514. The court there said, "We cannot say . . . that the quantum of evidence was so meagre as to show that the finding does not rest upon a rational basis . . . ." *Id.* Meanwhile, a dissenter on the Indiana Supreme Court urged

the rest of the court to find for the claimant as a matter of law. *See id.* (Draper, J., dissenting).

Later, in *Burdette v. Perlman-Rocque, Co.*, the Indiana Court of Appeals again approved the denial of benefits to the estate of a worker who died of head injuries following an idiopathic fall to a concrete floor. 954 N.E.2d 925, 927–28 (Ind. Ct. App. 2011). The court there relied on *Kovatch. Id.* at 931, 932. Yet it also emphasized "the deferential standard of review" and the fact that the workers' compensation board had "weighed the evidence." *Id.* at 932.

In *Ledbetter v. Michigan Carton Co.*, the Michigan Court of Appeals concluded,

> The plaintiff's remaining argument for compensation is that the concrete or cement floor onto which the decedent fell aggravated his injury. Although we recognize that a fall onto a softer surface may have lessened the impact, we are not convinced that the composition of the floor necessarily aggravated the harm. It cannot be said with certainty that had the fall occurred at a different location, away from the employer's premises, the injuries would have been less serious.

253 N.W.2d 753, 756 (Mich. Ct. App. 1977). This appears to be the appellate court's factual finding. We might be prepared to accept such a finding if the commissioner had made it here, applying the appropriate burden of proof.

In *Harris v. Ohio Bureau of Workers' Compensation*, the Ohio Court of Appeals upheld a denial of benefits to a worker who suffered an idiopathic fall onto a concrete floor, resulting in a subdural hematoma. 690 N.E.2d 19, 19–20 (Ohio Ct. App. 1996). The court stated it was "compelled" to follow a prior decision of the Ohio Supreme Court. *Id.* at 20 (citing *Stanfield v. Indus. Comm'n*, 67 N.E.2d 446 (Ohio 1946) (per curiam)). The Ohio Supreme Court precedent, however, involved a worker

who died of the heart condition that precipitated his fall, not from injuries sustained in the fall. *See Stanfield*, 67 N.E.2d at 447.

One member of the *Harris* panel dissented, observing, "I am simply not willing to hold that one who hits his head on a picnic table in a lunchroom can recover, but if he falls all the way to the floor he is out of luck." *Harris,* 690 N.E.2d at 22 (Painter, J., dissenting).

*Dugan v. Sabre International* also involved an idiopathic fall to a level floor. 39 P.3d 167, 168 (Okla. Civ. App. 2001). Without mentioning the nature of the flooring, the Oklahoma Court of Civil Appeals affirmed the workers' compensation court's denial of benefits. *Id.* at 168–70. A dissenter took issue, stating,

> The issue is not whether Claimant suffered seizures but rather whether the injury arose from a risk associated with work. The incident occurred at work when he suffered a seizure, fell, *and struck his head on a concrete floor.* The injury occurred because his head hit his employer's concrete floor—*not because he had a seizure and fell.*
>
> The concrete floor is an incident and risk of employment!

*Id.* at 170 (Rapp, J., dissenting).

In *Hamilton v. SAIF Corp.*, the Oregon Court of Appeals sustained the workers' compensation board's determination that the injuries an employee suffered after she fainted and fell from a standing position onto a brick floor were not compensable. 302 P.3d 1184, 1185 (Or. Ct. App. 2013). The court noted,

> Claimant's work environment, which required standing on a hard kitchen floor, is unlike situations where the employer has placed the worker in settings that may greatly increase the danger of injury, such as by requiring her to stand on a ladder or an elevated platform or to stand next to a dangerous object that would have caused severe injury had she fallen on it. Instead, she fell on level ground onto the floor. There was nothing special about the floor or the height from which she fell that greatly increased the danger of injury.

*Id.* at 1188. Significantly, the court there applied a "greatly increased the danger" standard which does not conform with Iowa law. *Id.*

Several points about these out-of-state authorities can be noted. In some instances, the courts applied a "special" or "greatly increased" risk standard that doesn't appear to match Iowa law. *See Gates Rubber*, 705 P.2d at 7; *Hamilton*, 302 P.3d at 1188; *Kraynick*, 148 N.W.2d at 671. Three of the decisions, one of them fairly recent, drew dissents. *See Pollock*, 105 N.E.2d at 514; *Harris*, 690 N.E.2d at 22; *Dugan*, 39 P.3d at 170. Overall, many of the foregoing decisions rest on *legal* determinations that the hardness of the floor can never constitute an increased risk attributable to the employment. *See Gates Rubber*, 705 P.2d at 7; *Kovatch*, 679 N.E.2d at 944 n.6; *Luvaul*, 384 P.2d at 890; *Harris*, 690 N.E.2d at 20 (majority opinion); *Hamilton*, 302 P.3d at 1188; *Zuchowski*, 229 A.2d at 66; *Bagwell*, 88 S.E.2d at 615; *Kraynick*, 148 N.W.2d at 671. In our view, that approach is off the mark because it transforms a factual issue into a legal one.

In *Chapman v. Hanson Scale Co.*, the Mississippi Supreme Court went arguably too far in the opposite direction in reversing a denial of benefits for an idiopathic fall to a concrete floor. 495 So. 2d 1357, 1358 (Miss. 1986). The court reasoned, "We consider exposure to falls upon a concrete floor a sufficient risk attendant upon employment so that an injury caused in part thereby is compensable." *Id.* at 1361. This too strikes us as converting a factual matter into a legal one, by holding in effect that idiopathic falls to concrete floors are *always* compensable. *See also George v. Great E. Food Prods., Inc.*, 207 A.2d 161, 161–63 (N.J. 1965) (finding as a matter of law that an idiopathic fall to a concrete floor resulting in a skull fracture was compensable).

We believe the court hit the right note in *Duval County School Board v. Golly*, 867 So. 2d 491 (Fla Dist. Ct. App. 2004). There the claimant

suffered a severe closed head injury after undergoing a seizure and falling on a concrete walkway. *Id.* at 491–92. Benefits were awarded. *Id.* On appeal, the Florida District Court of Appeal reversed and remanded for further proceedings. *Id.* at 494. It concluded that "a fall to a level concrete floor is [not] automatically compensable" and that there had to be "a particularized finding of special or increased hazard." *Id.* It faulted the judge of compensation claims because he "felt constrained by [a prior case] to find that the concrete surface was, as a matter of law, an increased hazard." *Id.*; *see also Prince*, 155 N.E.2d at 554 (upholding a denial of benefits as "not against the manifest weight of the evidence"); *Pollock*, 105 N.E.2d at 513 (declining to say "that the quantum of evidence was so meagre as to show that the finding does not rest upon a rational basis"); *Tex. Emp'rs Ins. v. Page*, 553 S.W.2d 98, 101 (Tex. 1977) (holding that a level-ground idiopathic fall does not necessarily preclude recovery and that it was a factual issue "whether the surface represented such a hazard within the scope of [the claimant's] employment as to allow recovery for the fall and resultant injury").

We can think of two other reasons for us to allow the workers' compensation commissioner to consider the hardness of the floor *factually*, instead of our deeming it *legally* insufficient in every idiopathic fall case. First, although most of the reported cases end up denying recovery, the divergence of authority and the presence of dissenting opinions suggest that reasonable people can come to different conclusions. Given that the underlying question is really a factual one, i.e., whether the conditions of employment increased the employee's risk, it makes sense for that question to be decided on a case-by-case basis by the commissioner based on the factual record.

Second, we have long applied the workers' compensation statute "broadly and liberally in keeping with its humanitarian objective: the benefit of the worker and the worker's dependents." *Xenia Rural Water*

*Dist.*, 786 N.W.2d at 257. This includes cases where the issue was whether the accident arose out of and in the course of employment. *Id.* at 253–55; *see also 2800 Corp. v. Fernandez,* 528 N.W.2d 124, 129–30 (Iowa 1995); *Hanson v. Reichelt,* 452 N.W.2d 164, 168 (Iowa 1990).

Therefore, consistent with *Koehler Electric,* in idiopathic-fall cases, we believe the claimant should have both the burden and the opportunity to meet the increased-risk test. *See Koehler Elec.*, 608 N.W.2d at 5. That is, there is no hard-and-fast rule in Iowa that idiopathic falls onto level floors are never compensable. Nor is there a legal principle that idiopathic falls to hard floors are always compensable. Rather, the claimant may recover if he or she proves that "a condition of his [or her] employment increased the risk of injury." *Id.* at 5.[1]

We pause to discuss one last case, from a neighboring jurisdiction. Recently, in fact too recently to be incorporated in the parties' briefing here, the Nebraska Supreme Court decided a case somewhat similar to ours. In *Maroulakos v. Walmart Associates, Inc.*, a Walmart employee suffered an idiopathic seizure and fell to the ground, receiving a facial laceration, sinus fractures, and possibly a traumatic brain injury. 915 N.W.2d 432, 436–37 (Neb. 2018). Originally, the employee primarily argued that he had tripped over a pallet—i.e., that the fall was not idiopathic. *Id.* at 437. On appeal, he tried to claim that he had fallen into an industrial shelving unit on his way to the floor and that the increased-danger rule entitled him to recovery. *Id.* The court found a lack of factual

---

[1]The actual-risk rule that we relied upon in *Lakeside Casino* remains appropriate for *unexplained* rather than *idiopathic* injuries, such as the fall that occurred in that case. *See Lakeside Casino*, 743 N.W.2d at 177–78. Notably, in *Lakeside Casino*, we distinguished the prior case of *McIlravy v. North River Insurance Co.*, 653 N.W.2d 323, 326, 331 (Iowa 2002), where the claimant's knee popped as he was simply walking across a level cement floor. *See id.* at 175 & n.4, 177. Based on that information alone, the employer had a reasonable basis for initially denying workers' compensation benefits. *See McIlravy*, 653 N.W.2d at 331. But the fact that merely walking across a level floor might not meet the actual-risk test says nothing about whether falling on a ceramic tile floor would meet the increased-risk test.

support for the employee's new theory that his head had encountered a shelving unit on the way down. *Id.* at 440. As the court put it,

> Maroulakos did not present any evidence that his facial and potential brain injuries were inconsistent with a fall to a hard tile floor or that his potential brain injuries did not result solely from his idiopathic condition. Therefore, any finding that the increased-danger rule did apply would have been purely speculative.

*Id.*

In *Maroulakos*, the employee apparently did not try to argue that an idiopathic fall directly to the floor could have been compensable under the increased-danger rule. *See id.* And we do not know exactly what the flooring inside that Walmart was like. Here, by contrast, the employee *is* arguing that his fall to the floor should have been compensable under the increased-risk test. We see no logical reason why that test could not, in an appropriate case, be met.

**IV. Conclusion.**

In sum, we conclude that whether injuries suffered in an idiopathic fall directly to the floor at a workplace "aris[es] out of . . . employment" is a factual matter, not a legal one. The factual question to be determined is whether a condition of employment "increased the risk of injury." *Koehler Elec.*, 608 N.W.2d at 5. For the foregoing reasons, we reverse the judgment of the district court and remand to the district court with instructions to remand this matter to the commissioner for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except Waterman, J., who dissents, and Christensen, J., who takes no part.

**WATERMAN, Justice (dissenting).**

I respectfully dissent and would affirm the decisions of the district court and commissioner that Jason Bluml's injuries from his idiopathic fall onto a level floor are not compensable as a matter of law under Iowa Code chapter 85 (2011). The ceramic tile floor was not slippery. Hard-surface floors are ubiquitous and not a hazard of employment. It is undisputed that Bluml's seizure was unrelated to his working conditions. It is fortuitous that he fell due to his seizure at work rather than after hours walking down a concrete sidewalk or on some other hard surface. Before today, we have never held an idiopathic fall from a standing or walking position onto a level floor of any surface was compensable.

In *Koehler Electric v. Wills*, the last time we addressed idiopathic falls under chapter 85, we upheld workers' compensation benefits for injuries sustained in a fall from a ladder, but did so "based on common experience that the risk of injury is greater when one falls from a height of four to five feet onto a concrete floor *than when one falls on level ground.*" 608 N.W.2d 1, 5 (Iowa 2000) (emphasis added). I agree that injuries sustained in a fall from a ladder or scaffolding are compensable. But injuries are not compensable when the employee's personal health problem results in a fall while walking or standing on a level, dry floor. Bluml was working behind a counter without the hazardous risk of being four to five feet up a ladder.

As the court acknowledges, a majority of jurisdictions have determined as a matter of law that idiopathic falls on a level floor (including concrete floors and other hard surfaces) are not compensable. I would follow the majority rule and the respected treatise, 1 Arthur Larson et al., *Larson's Workers' Compensation Law* § 9.01[4][a], at 9-7 to 9-8 (2018) ("A

distinct majority or jurisdictions . . . have denied compensation in level-fall cases."), applying this bright-line rule. Instead, today's decision makes Iowa an outlier and undermines the careful balance the legislature struck with our workers' compensation law.

"The workers' compensation statute is not a general health insurance policy that extends to any and all injuries that happen to occur while on the job." *Miedema v. Dial Corp.*, 551 N.W.2d 309, 312 (Iowa 1996). Rather, the purpose of Iowa Code chapter 85 "is to make statutory compensation available to employees when the employees sustain injuries as a result of the hazards of the business." *Staff Mgmt. v. Jimenez*, 839 N.W.2d 640, 650 (Iowa 2013). "It is well settled in Iowa that for an injury to be compensable, it must occur both in the course of and arise out of employment." *Miedema*, 551 N.W.2d at 310–11; *see also* Iowa Code § 85.3(1) (requiring compensation "for any and all personal injuries sustained by an employee arising out of and in the course of the employment"). Bluml was required to prove that his injury "arose out of his employment" at Long John Silver's. *Miedema*, 551 N.W.2d at 311 (requiring a "causal connection . . . between the conditions of his employment and the injury"). "This means that [his injury] must be a rational consequence of a hazard connected with the employment." *Id.* (quoting *Cedar Rapids Cmty. Sch. v. Cady*, 278 N.W.2d 298, 299 (Iowa 1979)). The commissioner correctly determined that a dry, level floor at a fast-food restaurant is not a workplace hazard as a matter of law. There is no hazard to prevent or guard against.

On remand, the commissioner may still find factually that Bluml's injury did not arise out of his employment. Nevertheless, our court leaves the door open to a contrary finding and resulting costly payout that would eviscerate section 85.3(1)'s "arising out of . . . the employment" proof

requirement and convert the employer to a general health insurer, contrary to chapter 85.

For these reasons, I am unable to join the court's opinion.