# IN THE COURT OF APPEALS OF IOWA

No. 22-0030
Filed February 22, 2023

**NEWTON COMMUNITY SCHOOL DISTRICT and EMCASCO INSURANCE COMPANY,**
Petitioners-Appellants,

**vs.**

**CASSIDY HUBBARD-McKINNEY,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.

An employer and its insurer appeal a judicial review decision affirming the workers' compensation commissioner's award of benefits to an employee. **AFFIRMED.**

D. Brian Scieszinski of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellants.

Richard R. Schmidt of Mueller, Berg, & Schmidt, P.L.L.C., Des Moines, for appellee.

Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**AHLERS, Presiding Judge.**

The facts of this workers' compensation appeal are largely undisputed. In 2018, Cassidy Hubbard-McKinney fell and injured her left knee while working for Newton Community School District (the school). The parties agree that the injury arose out of and in the course of her employment, the injury caused permanent disability, and the injury is a scheduled injury to Hubbard-McKinney's leg. *See* Iowa Code § 85.34(2)(p) (2018) (providing for 220 weeks of benefits for loss of a leg). They also agree that Hubbard-McKinney sustained a nine percent permanent impairment to her leg using the appropriate guides to the evaluation of permanent impairment published by the American Medical Association.[1] They even agree that, of the nine percent impairment, seven percent is attributable to aggravation of preexisting degenerative conditions of Hubbard-McKinney's knee and the additional two percent was directly caused by the fall at work. They disagree on whether the school is responsible for the aggravation of the preexisting condition, which led to contested proceedings before the workers' compensation commission and on judicial review. So, the issue is one of apportionment. *See Warren Props. v. Stewart*, 864 N.W.2d 307, 315 (Iowa 2015) (referring to Iowa Code section 85.34(7) as a "statutory rule of apportionment").

Following a contested hearing, a deputy workers' compensation

---

[1] *See* Iowa Code § 85.34(2)(x) (requiring use of the guides published by the American Medical Association in determining percentage of impairment); Iowa Admin. Code r. 876–2.4 ("The Guides to the Evaluation of Permanent Impairment, Fifth Edition, published by the American Medical Association are adopted for determining the extent of loss or percentage of impairment for permanent partial disabilities and payment of weekly compensation for permanent partial scheduled injuries under Iowa Code section 85.34(2) not involving a determination of reduction in an employee's earning capacity.").

commissioner assessed the evidence—which included conflicting expert opinions—and concluded that the workplace fall aggravated Hubbard-McKinney's underlying, preexisting degenerative conditions that had previously been asymptomatic. As a result, the deputy found that Hubbard-McKinney was entitled to compensation for the entire nine percent permanent impairment to her left leg. On intra-agency appeal, the workers' compensation commissioner affirmed the deputy. The school petitioned for judicial review, and the district court affirmed the commissioner's ruling. The school appeals.

On appeal, the school does not challenge any of the factual findings made by the commissioner.[2] Nor does it challenge case law prior to 2017 that allows an employee to recover for preexisting conditions when the conditions were aggravated, accelerated, worsened, or "lit up" due to the injury. *See, e.g., Rose v. John Deere Ottumwa Works*, 76 N.W.2d 756, 761 (Iowa 1956) ("If plaintiff was diseased and his condition was aggravated, accelerated, worsened or 'lighted up' by the injury so it resulted in the disability found to exist plaintiff was entitled to recover."). Instead, the school relies entirely on a legislative change to Iowa Code section 85.34(7) in support of its contention that the school is not responsible for the seven percent impairment related to preexisting degenerative conditions regardless of whether they were aggravated by the work fall.

---

[2] At the hearing before the deputy commissioner, the school contested whether Hubbard-McKinney's preexisting degenerative conditions in her leg were symptomatic before the fall. Having lost that contest before the agency, on appeal, the school accepts the finding that Hubbard-McKinney's knee was asymptomatic before the fall.

Before getting to the legislative change and the parties' arguments, we first address the standard of review. To the extent this case calls on us to interpret Iowa Code chapter 85, "the question on review is whether the agency's interpretation was erroneous, and we may substitute our interpretation for the agency's." *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006); *see* Iowa Code § 17A.19(10)(c). To the extent we are called to review the commissioner's ultimate conclusion, the challenge is to the agency's application of the law to the facts, "and the question on review is whether the agency abused its discretion by, for example, employing wholly irrational reasoning or ignoring important and relevant evidence." *Meyer*, 710 N.W.2d at 219; *see* Iowa Code § 17A.19(10)(i), (j).

Turning to the legislative change, Iowa Code section 85.34(7) was adopted in 2004 and amended in 2017. *See Warren Props.*, 864 N.W.2d at 313 (detailing the history of apportionment leading up to the legislature's adoption of section 85.34(7) in 2004). The effective date of the 2017 amendment was prior to Hubbard-McKinney's injury. *See* 2017 Iowa Acts ch. 23, § 24. To highlight the amendments, we provide the pre-amendment 2004 text with the 2017 deletions from that text shown by strike-throughs and additions to that text shown by underline:

> a. An employer is ~~fully~~ liable for compensating ~~all~~ only that portion of an employee's disability that arises out of and in the course of the employee's employment with the employer. and that relates to the injury that serves as the basis for the employees claim for compensation under this chapter, or chapter 85A, 85B, or 86. An employer is not liable for compensating an employee's pre-existing disability that arose out of and in the course of employment from a prior injury with the employer, to the extent that the employee's pre-existing disability has already been compensated under this chapter, or chapter 85A, 85B, or 86. An employer is not liable for compensating an employee's pre-existing disability that arose out of

and in the course of employment with a different employer or from causes unrelated to employment.

~~b. (1) If an injured employee has a pre-existing disability that was caused by a prior injury arising out of and in the course of employment with the same employer, and the pre-existing disability was compensable under the same paragraph of subsection 2 as the employee's present injury, the employer is liable for the combined disability that is caused by the injuries, measured in relation to the employees condition immediately prior to the first injury. In this instance, the employer's liability for the combined disability shall be considered to be already partially satisfied to the extent of the percentage of disability for which the employee was previously compensated by the employer.~~

~~(2) If, however, an employer is liable to an employee for a combined disability that is payable under subsection 2, paragraph "*u*", and the employee has a pre-existing disability that causes the employee's earnings to be less at the time of the present injury than if the prior injury had not occurred, the employer's liability for the combined disability shall be considered to be already partially satisfied to the extent of the percentage of disability for which the employee was previously compensated by the employer minus the percentage that the employee's earnings are less at the time of the present injury than if the prior injury had not occurred.~~

~~*c.* A successor employer shall be considered to be the same employer if the employee became part of the successor employer's workforce through a merger, purchase, or other transaction that assumes the employee into the successor employer's workforce without substantially changing the nature of the employee's employment.~~

*See* 2017 Iowa Acts ch. 23, §§ 13, 14.

The school contends this legislative change negates compensability for the seven percent impairment attributable to Hubbard-McKinney's preexisting degenerative condition of her knee that was aggravated by the work fall. In support of this contention, the school relies on the language "[a]n employer is not liable for compensating an employee's preexisting disability that arose out of and in the course of employment . . . from causes unrelated to employment." Iowa Code § 85.35(7).

The deficiency in the school's argument is that it conflates preexisting condition with preexisting disability. Our workers' compensation statute and case law tell us they are not the same. As noted, the apportionment provisions of section 85.34(7) only apply to preexisting "disability." Although disability is not specifically defined in chapter 85, looking at the chapter as a whole provides insight into the term's meaning. *See Save Our Stadiums v. Des Moines Indep. Cmty. Sch. Dist.,* 982 N.W.2d 139, 144 (Iowa 2022) ("We interpret statutes as a whole."). Section 85.33(2) defines disability in reference to temporary partial or total disability as "the condition of an employee for whom it is medically indicated that the employee is not capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury." This definition informs us that disability within the context of chapter 85 refers not to a worker's asymptomatic condition, but to the inability to work.

This distinction between condition and disability is also recognized by our case law. In *Floyd v. Quaker Oats*, our supreme court described the distinction as follows:

> Ever since *Rose v. John Deere Ottumwa Works*, 76 N.W.2d 756 (1956), our law has recognized the distinction between preexisting conditions and preexisting disability. Full compensation is allowed for the result of workplace activities aggravating a preexisting condition. Thus, for the apportionment rule to be applied in situations in which apportionment would otherwise be proper, the preexisting injury must have independently produced a discreet and ascertainable degree of disability. In other words, it must be shown that a particular percentage of permanent disability would have resulted from the prior event acting alone.

646 N.W.2d 105, 110 (Iowa 2002) (internal citations omitted).[3] While *Floyd* predated the adoption of the apportionment provisions of section 85.34(7) in 2004 (and the amendment in 2017), we assume the legislature is familiar with the existing state of the law when it enacts new legislation. *See Victoriano v. City of Waterloo*, ___ N.W.2d ___, ___, 2023 WL 115162, at *2 (Iowa 2023). As noted in the passage from *Floyd* above, the distinction between preexisting conditions and preexisting disability has been made at least since the *Rose* decision in 1956. Yet, in adopting the apportionment provisions of section 85.34(7) in 2004 and then amending them in 2017, the legislature chose to apportion only preexisting disability, not preexisting conditions. This tells us that the legislature intended to

---

[3] This distinction is also recognized by *Larson's Workers' Compensation Law*, a respected treatise in this area of the law. *See Bluml v. Dee Jay's Inc.*, 920 N.W.2d 82, 92 (Iowa 2018) (Waterman, J., dissenting) (recognizing *Larson's* as a "respected treatise"). *Larson's* notes that, when considering apportionment statutes:

> [I]t is important to distinguish such prior disability (which means the kind of definite loss of a member, or permanent impairment of the body, that would be recognized as a disability for compensation purposes if work-connected) from prior predisposing weakness or disease which, although not disabling at the time of injury, is precipitated by the industrial injury and contributes to its effects.

8 Arthur Larson et al., *Larson's Workers' Comp. Law* ch. 90, at 90-1 (2022). The treatise goes on to note:

> Nothing is better established in compensation law than the rule that, when industrial injury precipitates disability from a latent prior condition, . . . the entire disability is compensable, and except in states having special statutes on aggravation of disease, no attempt is made to weigh the relative contribution of the accident and the preexisting condition to the final disability or death. Apportionment does not apply in such cases, nor in any case in which the prior condition was not a disability in the compensation sense.

*Id.* § 90.04[1], at 90-8 (footnotes omitted). As a concluding comment on the topic, the treatise notes that "[t]o be apportionable, then, an impairment must have been independently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident." Id. § 90.04[3], at 90-10.

continue the distinction between preexisting condition and preexisting disability.

Here, Hubbard-McKinney's preexisting knee condition did not constitute a disability, as it was asymptomatic, did not interfere with her ability to work, and had not "produced a discreet and ascertainable degree of disability." *See Floyd*, 646 N.W.2d at 110. Having no disability within the meaning of the workers' compensation statute, the school was not entitled to reduce Hubbard-McKinney's workers' compensation benefits due to her preexisting, asymptomatic condition when her fall at work aggravated that condition to result in a nine percent impairment to her leg. The commissioner was correct in granting benefits to Hubbard-McKinney based on the full nine percent of her scheduled member disability, and the district court was correct to affirm the commissioner's ruling.

**AFFIRMED.**