# In the Iowa Supreme Court

No. 23–1402

Submitted September 10, 2025—Filed October 3, 2025

**Den Hartog Industries** and **West Bend Mutual Insurance Company,**

Appellants,

vs.

**Tyler Dungan,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, judge.

An employer and a carrier seek further review of a court of appeals decision affirming the dismissal of their petition for review of a workers' compensation decision awarding partial permanent disability benefits to an employee based on lost earning capacity. **Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded with Instructions.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

Lee P. Hook, Michael S. Roling, Christopher S. Spencer, Morgan R. Todd Borron, and Jordan R. Reed (until withdrawal) of Peddicord Lillis LLP, West Des Moines, for appellants.

Janece Valentine of Valentine Law Office, P.C., Fort Dodge, for appellee.

**Mansfield, Justice.**

### I. Introduction.

Read, and declare the meaning.

William Shakespeare, *Cymbeline* act V, sc. 5, l. 530.

These words were addressed to a soothsayer in Shakespeare's play, but today they are addressed to our court. The present case requires us to declare the meaning of Iowa Code section 85.34(2)(*v*) (2019), and most particularly its third sentence. That sentence provides,

> If an employee who is eligible for compensation under this paragraph returns to work or is offered work for which the employee receives or would receive the same or greater salary, wages, or earnings than the employee received at the time of the injury, the employee shall be compensated based only upon the employee's functional impairment resulting from the injury, and not in relation to the employee's earning capacity.

We interpret those words according to their plain meaning. Thus, we hold that an employee eligible for compensation under that paragraph who returns to work at the same or greater salary, wages, or earnings should be compensated based upon their functional impairment resulting from the injury. We are not persuaded by the contrary, nontextual arguments advanced in this litigation. In some other cases, references to a "bifurcated litigation process," to a rule of construction that workers' compensation laws should be interpreted in claimants' favor to effectuate their humanitarian purpose, and to other policy arguments might carry the day. But they cannot overcome plain text here.

Accordingly, we hold that the commissioner erred in awarding permanent partial disability benefits based on earning capacity rather than functional impairment, and we reverse and remand for further proceedings.

**II. Facts and Procedural History.**

On July 24, 2019, Tyler Dungan was working as an outdoor loader and material handler for Den Hartog Industries in Hospers. Den Hartog manufactures plastic tanks of various sizes. One such container was shipped to Las Vegas, Nevada, where it was used to make the world's largest margarita. Dungan's job duties included lifting and carrying loads up to seventy-five pounds.

On the 24th, Dungan was hoisting a seventy-pound hoop as part of a loading process. Unexpectedly, the hoop caught on the trailer as Dungan jerked it upward. Dungan immediately felt a lightning-like sensation up and down his back. Dungan dropped to his knee. Later, he informed his supervisor that he might have injured his back. Dungan missed the next three days of work.

Although Dungan returned to work, his back pain continued. Initially, Dungan sought chiropractic care, but in September, he was referred to a medical clinic that specialized in neuroscience, orthopedics, and the spine. Dr. Hendrik Klopper, a neurosurgeon, became Dungan's treating physician. He diagnosed Dungan with a disc herniation at L4–L5 and an annular tear at L5–S1. Dungan received steroid injections. Dungan also underwent physical therapy, which provided some relief but didn't alleviate all symptoms.

Dungan had been earning $15.16 per hour from Den Hartog at the time of his back injury. After his injury, Den Hartog increased Dungan's pay to $15.50 per hour, even though Dr. Klopper had placed Dungan on a forty-pound weight restriction. Still, the pain caused Dungan to miss "a fair bit of work."

In June 2020, Dungan and his fiancée decided to relocate from Sioux County. Although Dungan "loved" his job at Den Hartog, the couple had just had their first child and wanted to be closer to family. So, Dungan resigned from

Den Hartog and went to work at Meridian Manufacturing as a welder. Pay increases at Meridian brought Dungan's wages up to $17.48 per hour.

Dungan continued to see Dr. Klopper and reported ongoing discomfort. He received steroid injections at L4–L5 in June and September.

By the time of the hearing, Dungan had left his employment with Meridian. He was working as a welder at Gomaco in Ida Grove, earning approximately $20.15 per hour. When Dungan joined Gomaco, he sought and obtained a release from Dr. Klopper as to all work restrictions. Dungan's welding job at Gomaco is less physically demanding than his job as a loader and handler at Den Hartog had been.

On March 12, 2021, Dungan filed a petition for workers' compensation benefits relating to his work injury at Den Hartog.[1] Dungan's treating physician—Dr. Klopper—applied the American Medical Association *Guides to the Evaluation of Permanent Impairment* to Dungan's back injury and assigned a 5% impairment to the body as a whole.

Each side in the proceeding retained a physician to perform an independent medical exam (IME). Dr. Sunil Bansal—who had been retained by Dungan's counsel—assigned an 8% impairment to the body as a whole. Another physician—retained by Den Hartog's counsel—concurred in Dr. Klopper's 5% figure. Dr. Bansal's higher percentage rating was based largely on his determination that Dungan was suffering from ongoing radiculopathy.

Following a hearing, the deputy found Dr. Bansal's evaluation more persuasive. He concluded that Dungan did indeed have ongoing radiculopathy.

---

[1]In discussing the workers' compensation proceeding, we will refer to the employer and its workers' compensation carrier collectively as "Den Hartog."

He therefore determined that Dungan had sustained an impairment of 8% to the body due to the July 24, 2019 work injury.

Yet the deputy also concluded that an unscheduled injury, such as Dungan's back injury, was required to be compensated according to the industrial method under Iowa Code section 85.34(2)(*v*). In other words, the ultimate issue was Dungan's loss of earning capacity, not his functional impairment, from the work injury. The deputy noted that Dungan was twenty-six years old, had no postsecondary education, and would "more likely than not be unable to return to work as physically demanding as his day-to-day duties at Den Hartog made that job." Considering these factors, the deputy found that Dungan had sustained a 15% industrial disability and, therefore, awarded Dungan seventy-five weeks of permanent partial disability benefits in addition to costs and continued medical care.

Den Hartog sought review by the workers' compensation commissioner, who affirmed the deputy's decision. Den Hartog then petitioned for judicial review, challenging both the use of the industrial method and the commissioner's factual determination that Dungan had sustained a 15% loss of earning capacity.

The district court entered an order denying the petition for judicial review. The district court agreed that section 85.34(2)(*v*) mandated determination of Dungan's permanent partial disability benefits by the industrial method and further held that "substantial evidence supports the commissioner's finding of an industrial loss of 15%."

Den Hartog appealed, and we transferred the appeal to the court of appeals. In a 2–1 decision, the court of appeals affirmed the district court. The majority agreed with the district court that the industrial method applied and that substantial evidence supported the finding of a 15% loss of earning capacity.

A dissenting judge took the view that section 85.34(2)(*v*)'s "plain and unambiguous text requires Dungan to 'be compensated based only upon [his] functional impairment resulting from the injury, and not in relation to [his] earning capacity.' " (Alterations in original) (quoting Iowa Code § 85.34(2)(*v*)).

We granted Den Hartog's application for further review.

### III. Standard of Review.

As we have stated before,

> We review the workers' compensation commissioner's interpretation of Iowa Code chapter 85 for errors at law. *Evenson v. Winnebago Indus., Inc.*, 881 N.W.2d 360, 366 (Iowa 2016). "In recent years, we have repeatedly declined to give deference to the commissioner's interpretations of various provisions in chapter 85." *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Justice*, 867 N.W.2d 58, 65 (Iowa 2015) (citing numerous cases); *see also Warren Props. v. Stewart*, 864 N.W.2d 307, 311 (Iowa 2015) (recognizing that the legislature "has not vested the commissioner with the authority to interpret Iowa Code section 85.34(2)(*u*) [now 85.34(2)(*v*)] and (7)(*a*)"). We do not believe the terms of the workers' compensation statute at issue here are "uniquely within the subject matter expertise of the agency." *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 14 (Iowa 2010).

*JBS Swift & Co. v. Ochoa*, 888 N.W.2d 887, 892–93 (Iowa 2016).

"[W]e accept the commissioner's factual findings when supported by substantial evidence." *Gumm v. Easter Seal Soc. of Iowa, Inc.*, 943 N.W.2d 23, 28 (Iowa 2020) (alteration in original) (quoting *Bluml v. Dee Jay's Inc.*, 920 N.W.2d 82, 84 (Iowa 2018)).

### IV. Legal Analysis.

Several factual and legal propositions in this case are undisputed. Dungan suffered a back injury while working for Den Hartog in 2019. Such an injury is deemed an "unscheduled" injury and is compensated under Iowa Code section 85.34(2)(*v*). *See Bridgestone Ams., Inc. v. Anderson*, 4 N.W.3d 676, 685–86 (Iowa 2024) (explaining the types of injuries covered by Iowa Code

section 85.34(2)(*v*)). After Dungan sustained the back injury, he continued to work at Den Hartog. His earnings remained the same or increased. In 2020, Dungan voluntarily left Den Hartog.

The first question raised by this case, and as it turns out, the only one we need to answer, is whether section 85.34(2)(*v*) requires the application of the industrial method or the functional impairment method to compensate Dungan for his workplace injury. Section 85.34(2)(*v*) contains four sentences and provides:

> [1] In all cases of permanent partial disability other than those described or referred to in paragraphs "a" through "u", the compensation shall be paid during the number of weeks in relation to five hundred weeks as the reduction in the employee's earning capacity caused by the disability bears in relation to the earning capacity that the employee possessed when the injury occurred. [2] A determination of the reduction in the employee's earning capacity caused by the disability shall take into account the permanent partial disability of the employee and the number of years in the future it was reasonably anticipated that the employee would work at the time of the injury. [3] If an employee who is eligible for compensation under this paragraph returns to work or is offered work for which the employee receives or would receive the same or greater salary, wages, or earnings than the employee received at the time of the injury, the employee shall be compensated based only upon the employee's functional impairment resulting from the injury, and not in relation to the employee's earning capacity. [4] Notwithstanding section 85.26, subsection 2, if an employee who is eligible for compensation under this paragraph returns to work with the same employer and is compensated based only upon the employee's functional impairment resulting from the injury as provided in this paragraph and is terminated from employment by that employer, the award or agreement for settlement for benefits under this chapter shall be reviewed upon commencement of reopening proceedings by the employee for a determination of any reduction in the employee's earning capacity caused by the employee's permanent partial disability.

Iowa Code § 85.34(2)(*v*).

Sentences 2, 3, and 4 are relatively recent additions. The general assembly added them in 2017 as part of a series of amendments to the workers' compensation law. *See* 2017 Iowa Acts ch. 23 § 8.

We apply section 85.34(2)(*v*) in a straightforward manner as follows. Under sentences 1 and 2, Dungan's back injury would ordinarily be compensated according to the industrial method, based on "the reduction in the employee's earning capacity caused by the disability." Iowa Code § 85.34(2)(*v*). However, Dungan "return[ed] to work . . . for which [he] receive[d] or would receive the same or greater salary, wages, or earnings than [he] received at the time of the injury." *Id.* Therefore, under sentence 3, he should be compensated "based only upon [his] functional impairment resulting from the injury, and not in relation to [his] earning capacity." *Id.* Finally, Dungan was not "terminated from employment" by Den Hartog, so sentence 4 doesn't apply, and there is no review-reopening. *Id.* In other words, when all is said and done, Dungan should be compensated based on functional impairment, as dictated by sentence 3, not loss of earning capacity.

The commissioner found otherwise. He opined that the 2017 amendments created a "bifurcated litigation process." That process applies only when the employee returns to employment with the same employer at the same or greater earnings and is later terminated. The commissioner's views are correct insofar as they refer to sentence 4: If the employee is terminated, they can pursue a second litigation process, i.e., a review-reopening. But the commissioner's reference to a bifurcated litigation process doesn't address sentence 3 or the present case. Sentence 3 still applies even when, as here, sentence 4 doesn't. If the employee returns to work at the same or greater earnings and *isn't*

*terminated*, then there is only *one* litigation process, in which benefits are calculated using the functional impairment method.

The court of appeals majority didn't seem to be persuaded by the commissioner's reliance on a "bifurcated litigation process." But it got to the same result by a different path. As an initial matter, it found section 85.34(2)(*v*) ambiguous because it doesn't expressly address what happens when the employee returns to work at the same or greater earnings and isn't terminated. And after detecting an ambiguity, it relied on the principle that the workers' compensation law should be interpreted "broadly and liberally in keeping with its humanitarian objective: the benefit of the worker and the worker's dependents." *Xenia Rural Water Dist. v. Vegors*, 786 N.W.2d 250, 257 (Iowa 2010). On that basis, it ruled that Dungan's benefits were properly determined using the industrial method.

We disagree with the court of appeals' reasoning. Section 85.34(2)(*v*) isn't ambiguous. Instead, it provides for specific consequences that flow from specific events. That is, if an employee with a nonscheduled injury returns to work at the same or greater earnings, they get compensated based on their functional impairment. But, if they return to the same employer and are later terminated by that employer, they can pursue a review-reopening and seek benefits under the industrial method. Dungan fits the first circumstance but not the second, so his compensation should be based on his functional impairment.

Assume we have a law. The law provides that if *A* occurs, *X* will result, but if *B* occurs, then *Y* will result. That law isn't "ambiguous" as to what happens if *A* occurs but *B* doesn't. In that event, the result is clearly *X*.

The interpretations offered by the commissioner and the court of appeals majority end up giving no effect to sentence 3 of section 85.34(2)(*v*). And their

reading of sentence 4 is also unpersuasive. Sentence 4 presumes that *but for* the employee being terminated by their employer and electing to pursue a review-reopening, the employee's benefits would be based on functional impairment. It would be illogical to allow review-reopening for the purpose of seeking benefits under the industrial method pursuant to sentence 4 if the employee were already being compensated on that basis anyway.

Moreover, our present interpretation of section 85.34(2)(*v*) is consistent with statements we made in *Loew v. Menard, Inc.*, 2 N.W.3d 880 (Iowa 2024). *Loew* also involved an employee who sustained an employment-related back injury after the 2017 amendments had gone into effect. *Id.* at 885. Like Dungan, the employee returned to work with his employer at the same or greater compensation. *Id.* at 887.

In *Loew*, the deputy determined that this injury caused an 8% functional impairment. *Id.* at 885. This was on top of the employee's prior 20% functional impairment resulting from a pre-2017 back injury at the same workplace, for a total functional impairment of 28%. *Id.* However, the employee had received an award for the pre-2017 injury based on the industrial method and a 30% loss of earning capacity. *Id.* Since twenty-eight is less than thirty, the employer argued, and the commissioner agreed, that the employee had already been adequately compensated and was not entitled to separate compensation for the post-2017 compensation. *Id.* at 885–86. Notably, Iowa Code section 85.34(7) (2018) provides, "An employer is not liable for compensating an employee's preexisting disability that arose out of and in the course of employment from a prior injury with the employer, to the extent that the employee's preexisting disability has already been compensated . . . ."

We reversed and remanded. *Loew*, 2 N.W.3d at 889. We held that under section 85.34(2)(*v*), the employee had to be compensated for the additional functional impairment resulting from the post-2017 back injury, and there was no basis for offsetting that functional impairment award against a prior earning capacity award. *Id.* The two types of awards were "incommensurable." *Id.*

In the course of our opinion, we said,

Section 85.34(2)(*v*) provides two methods for calculating compensation for a nonscheduled permanent partial disability. Compensation shall be paid using the industrial method based on "the reduction in the employee's earning capacity caused by the disability." *Id.* However, when an employee returns to work at the "same or greater salary, wages, or earnings than the employee received at the time of the injury," then "the employee shall be compensated based only upon the employee's functional impairment resulting from the injury, and not in relation to the employee's earning capacity." *Id.* Here, Loew suffered a nonscheduled injury to his lower back, and he returned to work at the same or greater compensation. Because Loew returned to work at the same or greater compensation, he was entitled to compensation "based only upon [his] functional impairment resulting from the injury." *Id.* The commissioner found the August 13, 2018 work injury caused an 8% permanent functional impairment to his lower back. Pursuant to the plain language of the statute, Loew "shall be compensated" for the additional 8% functional impairment "resulting from the injury." *Id.* That equates to forty weeks' compensation (8% of 500 weeks).

*Id.* at 886–87.

Thus, in *Loew,* we read section 85.34(2)(*v*) as requiring functional impairment to be utilized as the basis for compensation when the employee returned to work at the same or greater compensation. *Id.* at 887. That was an essential point of the reasoning in our opinion. And it's the same conclusion we reach here today.

Dungan argues that it is better policy to allow someone in his situation to be compensated based on the industrial method from the very outset—thereby

avoiding the need for a potential review-reopening proceeding down the road. Dungan maintains that "carriers want finality, not open files"; that employees should not be "incentivized to try and get fired"; and that "[u]nscrupulous employers should not be incentivized to offer work at the same or greater wage for work which the injured worker cannot realistically perform."

These are plausible arguments, but they cannot overcome clear statutory language. Furthermore, one can think of counterarguments. For example, one might argue that it is sound public policy to incentivize employers to keep workers who sustain workplace injuries on the payroll at their prior level of compensation. One might also argue that it is fairer to provide workers' compensation benefits to such workers based on functional impairment rather than on a lost earning capacity that has not yet materialized in an actual loss of earnings. Resolving these competing policy arguments is the legislature's job; our duty is to interpret the text of the statute as written.

Because we have determined that Dungan's permanent partial disability benefits should have been calculated based on functional impairment, we need not address whether substantial evidence supports the commissioner's factual determination that Dungan suffered a 15% reduction in earning capacity.

**V. Conclusion.**

For the foregoing reasons, we reverse the judgment of the district court and remand this case with directions to the district court to remand this proceeding to the workers' compensation commissioner for calculation of benefits based on functional impairment.

**Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded with Instructions.**